UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Anthony Dickerson, | ) | Civil Action No.: 9:25-cv-13150-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| Equifax Information Services, LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Anthony Dickerson, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Beaufort Division because the Plaintiff resides in Beaufort County, and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Anthony Dickerson, is a resident and citizen of the State of South Carolina, Beaufort County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.  At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.     Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.     Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.     Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

14.     The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, failed to reinvestigate Plaintiff's disputes, and failed to block fraudulent information from Plaintiff's credit report after receipt of a police report.  Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## **FACTUAL ALLEGATIONS**

15. Plaintiff is the owner and operator of a funeral home which provides custom funeral services in the counties of Beaufort and Jasper.

16. In late 2023, Plaintiff discovered an unauthorized payment to Credit Strong on his bank statements. Plaintiff had no knowledge about Credit Strong and did not make this payment.

17. Thereafter, Plaintiff contacted Credit Strong directly and was informed by a representative that a line of credit in the amount of $2,500.00 had been opened in his name.

18. As Plaintiff did not apply for or open this line of credit, Plaintiff immediately instructed his bank to stop all payments to Credit Strong.

19. After doing some research, Plaintiff learned that Credit Strong was a division of Austin Capital. Accordingly, Plaintiff contacted Austin Capital directly and explained that a Credit Strong account had been opened in his name without his knowledge or permission.

20. On or about January 5, 2024, Plaintiff received a letter from Austin Capital's Operations Manager, Katy Moreno. The letter explained that Credit Strong is an online based program offered through Austin Capital designed to help consumers build credit by providing credit builder accounts to customers. The letter went on to state that the "Build $2,500" loan opened in Plaintiff's name was a 120-month term loan, and that the account was opened online and electronically signed on October 8, 2022. The letter went on to state that only three payments had been made on the loan and that the loan was closed on July 27, 2023. Finally, Plaintiff was told to forward a copy of any FTC identity theft report and/or police report he filed to Austin Capital.

21.     On or about April 15, 2024, Plaintiff reviewed his Equifax credit report and discovered several fraudulent accounts were reporting as his. Specifically, Austin Capital Bank, Merrick Bank, and Comenity Bank/Wayfair were all reporting accounts in Plaintiff's name.  There were also accounts that were reporting with inaccurate information: Capital One Auto Finance, Wakefield & Associates, Credit One Bank, and CPW.

22.     On or about May 17, 2024, Plaintiff filed an FTC Identity Theft Affidavit.

23.     On or about May 17, 2024, Plaintiff also filed a complaint against Defendant with the Consumer Financial Protection Bureau (hereinafter "CFPB"), wherein he stated he had reviewed his Equifax credit report and found several fraudulent accounts opened in his name.  Plaintiff stated he was upset and distressed by this discovery because he was applying for credit at the same time.  Plaintiff attached a copy of his FTC Affidavit to his CFPB complaint.

24.     On or about June 25, 2024, Defendant responded to the Plaintiff's complaint through the CFPB.  In that response, Defendant stated that a disputed former address, a former employer, and two Midland Credit Management tradelines had been removed. Unfortunately, the other fraudulent and disputed items remained.

25.     In July 2024, in an effort to get the fraudulent accounts removed from his credit reports as quickly as possible, Plaintiff hired Credit Beast, a credit repair service.

26.     On or about July 12, 2024, through Credit Beast, three dispute letters were sent to Defendant disputing Merrick Bank, Wakefield & Associates, Credit One Bank, Austin Capital Bank, Capital One Auto Finance, Comenity Bank/Wayfair, and Commissioner of Publ accounts.

5

27. In August 2024, Plaintiff called Austin Capital a second time and again specifically informed Austin Capital that the account was a fraudulent account opened in his name without his knowledge or consent. During that call, Austin Capital informed Plaintiff he needed to provide them with a police report.

28. On or about August 28, 2024, Plaintiff filed a report with the Beaufort County Sheriff's Department.

29. On or about August 30, 2024, Plaintiff filed a second complaint against Defendant with the CFPB. In this complaint, Plaintiff requested that the Austin Capital Bank, Capital One Auto Finance, Wakefield & Assoc., Merrick Bank Corp., Credit One Bank, CPW, and CB/Wayfair accounts be deleted from his credit report.

30. On or about September 4, 2024, Plaintiff sent Austin Capital a copy of his police report and driver's license via certified mail. Austin Capital received Plaintiff's police report and driver's license on September 9, 2024.

31. On or about September 10, 2024, Plaintiff filed a second FTC Affidavit.

32. Through the use of Credit Beast's credit repair service, Plaintiff learned of other accounts on his Equifax credit report that were reporting inaccurate information and/or were fraudulently opened in his name without his knowledge or permission.

33. On or about September 20, 2024, Plaintiff sent a letter to Defendant stating Defendant had violated the FCRA by re-aging the Merrick Bank account.

34. On or about October 2, 2024, Plaintiff sent five separate dispute letters to Defendant through Credit Beast, wherein Plaintiff disputed Austin Capital Bank, Capital One Auto Finance, CB Indigo, ComenityBank/Wayfair, Commissioner of Publ, and Merrick Bank

6

Corp. Plaintiff also disputed Inquiries for Westlake Service, Inc., GM Financial, Impex of Reidsville, Ally Financial, and Capital One Auto Finance, Auto Weekly Specials, Cap One Via Dealer, Global Lending Seve, OneMain, and Windhams Brad Used.

35. On or about October 13, 2024, Plaintiff received Defendant's response to Plaintiff's dispute through the CFPB. Defendant informed Plaintiff it had verified that the Comm of Public Works and Comenity Bank/Wayfair accounts belonged to him and both accounts had been updated. For all of the remaining accounts Plaintiff disputed, Defendant simply stated that each had been previously disputed and Defendant was either currently processing a dispute or had recently provided Plaintiff with the results. Accordingly, Defendant refused to investigate any of the remaining disputed accounts.

36. Defendant never specifically investigated Plaintiff's October 2, 2024, disputes and never provided Plaintiff with any reinvestigation results.

37. On or about December 30, 2024, Plaintiff obtained a copy of his Equifax credit report. Upon reviewing this credit report, Plaintiff discovered that there were still numerous fraudulent accounts reporting as his that did not belong to him.

38. In or around January 2025, Plaintiff terminated Credit Beast's services.

39. On or about February 24, 2025, Plaintiff sent a new dispute letter to Defendant. In his letter, Plaintiff specifically stated he had been the victim of identity theft and fraud and that, after checking his credit report, he had discovered multiple accounts had been opened in his name without his permission. Plaintiff also stated he had previously contacted Defendant about the fraudulent accounts, but the fraudulent accounts continued to be reported on his credit report. Plaintiff specifically disputed: Austin Capital Bank SSB,

7

Acct. #8A6189XXXX, Capital One Auto Finance, Account #620635XXXXXXXXXXX, ComenityBank/Wayfair Car, Account No. 778850XXXXXXX, and Merrick Bank, Account #412061XXXXXXXXXX.  Additionally, Plaintiff disputed hard inquiries for Ally Financial, Auto Weekly Specials, Cap One Via Dealer, Capital One Auto Finance, Global Lending Servi, GM Financial, Impex of Reidsville, OneMain, Westlake Service Inc., and Windhams Brad Used C.  Included with Plaintiff's letter was a letter from Capital One Auto Finance for Account No. 6206358026884 stating "Your Account is Paid in Full." Plaintiff also provided Defendant a debit card receipt showing the Merrick Bank account had been paid in full through North American Recovery in the amount of $1,464.18. Although the Merrick Bank account was fraudulently opened in Plaintiff's name, Plaintiff paid the account off in full because, at the time he discovered the account, he was in the process of trying to obtain a business loan and he was told the account had to be paid for the loan to go through.  Finally, Plaintiff provided Defendant his full Social Security number, date of birth, and address, and requested Defendant fix his credit report so it would be correct.

40.     Defendant received Plaintiff's dispute on March 15, 2025.

41.     On or about March 17, 2025, Defendant forwarded Plaintiff a letter stating it was unable to locate a credit file in its' database with the identification information Plaintiff provided. Defendant instructed Plaintiff to provide his complete name, current and former address, social security number and date of birth, along with copies of two items – one item to verify his identity and the other to verify his current address.

42.     On or about March 17, 2025, Defendant forwarded Plaintiff a second letter stating

it had received Plaintiff's dispute concerning Austin Capital Bank SSB #8357. However, because Plaintiff had already disputed Austin Capital twice within the past 90 days, Defendant considered Plaintiff's dispute frivolous and refused to investigate Plaintiff's dispute.

43.     On or about March 26, 2025, Plaintiff sent another dispute letter to Defendant. In this letter, Plaintiff again informed Defendant he had been the victim of identity theft, and that multiple fraudulent and incorrect accounts were appearing on his credit report. Specifically, Plaintiff again disputed the Austin Capital Bank SSB and ComenityBank/Wayfair accounts as fraudulent accounts opened in his name without his permission. Plaintiff disputed the balance being reported by Capital One Auto Finance as it should be reporting as paid in full with a $0 balance. Finally, Plaintiff disputed the Merrick Bank account as a fraud account opened in his name without his knowledge by his ex-wife. Plaintiff informed Defendant that the Merrick Bank account was only paid so he could move forward with a business loan. Plaintiff also disputed Rushmore Loan Manage reporting as 120 pays due as it had never been paid late. Plaintiff again disputed inquiries for Ally Financial, Auto Weekly Specials, Cap One Via Dealer, Global Lending Servi, GM Financial, Impex of Reidsville, OneMain, Westlake Service Inc., and Windhams Brad Used C. Included with Plaintiff's dispute letter was a copy of the letter from Capital One Auto Finance for Account No. 6206358026884 stating "Your Account is Paid in Full," a debit card receipt for North American Recovery showing the Merrick Account was paid, a copy of Plaintiff's police report, a copy of Defendant's March 17, 2025, letter, and a copy of Plaintiff's Driver's License and Social Security Card.

9

44. On or about March 27, 2025, Defendant forwarded Plaintiff a copy of "Remedying the Effect of Identity Theft" prepared by the CFPB.

45. Defendant received Plaintiff's Second Dispute on April 4, 2025.

46. On or about April 6, 2025, Defendant forwarded its Investigation Results to Plaintiff, wherein Defendant stated it had reviewed Plaintiff's current address, but nothing else.

47. On or about April 8, 2025, Defendant mailed Plaintiff a letter stating that as a result of a dispute Plaintiff had submitted, the Austin Capital Bank SSB Account had been removed from Plaintiff's Equifax credit file. Subsequently, Austin Capital Bank requested the account be reinserted onto Plaintiff's Equifax credit file and submitted a certification that the account belonged to Plaintiff and the information being reported was accurate. As a result, Defendant accepted Austin Capital Bank's certification and reinserted the fraudulent Austin Capital Bank SSB Account onto Plaintiff's Equifax credit report.

48. On or about May 7, 2025, Plaintiff sent a new dispute letter to Defendant. In this letter, Plaintiff stated he had received Defendant's Investigation Results, but the only item mentioned was his current address. Plaintiff again informed Defendant he had been the victim of identity theft. Plaintiff disputed the Austin Capital Bank and Comenity Bank/Wayfair accounts as having been opened in his name without his knowledge, the Capital One Auto Finance account as reporting incorrectly because it should be reporting as paid in full with a $0 balance, and the Merrick Bank account as a fraudulent account opened in his name without his permission by his ex-wife which was paid in full. Plaintiff also disputed the Rushmore Loan Manage account as reporting 120 past due when it had never been paid late. Finally, Plaintiff disputed inquiries for Ally Financial, Auto Weekly

Specials, Cap One Via Dealer, Capital One Auto Finance, Global Lending Servi, GM Financial, Impex of Reidsville, OneMain, Westlake Service Inc, and Windhams Brad Used C. Plaintiff again included a copy of the Capital One Letter stating the Account was paid in full, a copy of `the debit card payment receipt to North American Recovery on behalf of Merrick Bank, a copy of the police report he filed, and a copy of his driver's license for Defendant's review.

49. Defendant received Plaintiff's dispute packet on May 20, 2025.

50. On or about May 23, 2025, Defendant forwarded Plaintiff a letter confirming receipt of Plaintiff's request to block certain account information on Plaintiff's credit file, but refusing to block the requested information, despite receipt of Plaintiff's valid police report.

51. On or about May 23, 2025, Defendant forwarded Plaintiff a second letter including a copy of "Remedying the Effects of Identity Theft" prepared by CFPB.

52. On or about the same day, Defendant sent Plaintiff a third letter. In this letter, Defendant stated it had received Plaintiff's dispute concerning Merrick Bank *8726; however, because Plaintiff had already disputed the Merrick Bank account twice within 90 days, Defendant considered Plaintiff's dispute frivolous and refused to investigate Plaintiff's dispute.

53. On or about June 6, 2025, Defendant forwarded Plaintiff a letter which included a copy of "Remedying the Effects of Identity Theft" prepared by CFPB.

54. Defendant never investigated Plaintiff's May 7, 2025, disputes.

55. On or about July 9, 2025, Plaintiff filed a third FTC Identity Theft Affidavit.

56. To date, Defendant continues to refuse to remove the fraudulent accounts from

11

Plaintiff's Equifax credit file and continues to report inaccurate and incomplete information regarding the Capital One Auto Finance and Rushmore Loan Manage accounts.

57. Plaintiff is working to purchase a home for his family, but Defendant's continued refusal to remove and/or correct fraudulent and/or inaccurate accounts from Plaintiff's credit report is preventing Plaintiff from being able to purchase a home.

58. To date, Defendant also continues to report at least ten fraudulent hard inquiries as being authorized by Plaintiff.

59. Defendant never conducted a reasonable reinvestigation of Plaintiff's disputes.

60. Defendant wrongfully reinserted the fraudulent Austin Capital Bank account back onto Plaintiff's Equifax credit report.

61. Upon receipt of the ACDV responses from the furnishers of the fraudulent account information, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

62. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties

12

to investigate).

63. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

64. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

65. The Plaintiff adopts the averments and allegations of paragraphs 15 through 64 hereinbefore as if fully set forth herein.

66. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

67. Defendant repeatedly failed to delete and suppress erroneous, false, misleading,

and/or inaccurate information from the Plaintiff's credit file.

68. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to fix his Equifax credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

69. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

70. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

71. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

72. The Plaintiff adopts the averments and allegations of paragraphs 15 through 71 hereinbefore as if fully set forth herein.

73. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

74. Defendant willfully failed to delete and suppress erroneous, false, misleading,

and/or inaccurate information from the Plaintiff's credit file.

75. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

76. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to correct his Equifax credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

77. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

78. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

79. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

80. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.   Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.   For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
100 Coastal Drive, Suite 210
Charleston, SC 29492